# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| CHRISTINA WILEY, ALEXANDRIA LEE, TAWNEY BRIGGS, and CHRISTOPHER KORDA, each individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>RUGSUSA, LLC,<br><br>      Defendant. | Case No. 6:23-cv-03250-SRB<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

1

Before the Court is Plaintiffs' Motion for Final Approval of Class Action Settlement ("Motion for Final Approval"). (Doc. #40.) Upon review, the motion is **GRANTED**. Additionally, before the Court is Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards ("Motion for Fees"). (Doc. #35.) As set forth below, that motion is **GRANTED IN PART** and **DENIED IN PART**.

On February 27, 2024, the Court granted Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Conditional Class Certification.[1] On June 26, 2024, the Court held a final fairness hearing on the Motions currently before the Court. The Court has reviewed the Motions and their accompanying materials, and finds that the factors articulated in Federal Rule of Civil Procedure 23 weigh in favor of final approval. Further, the Court reviewed the motions and accompanying materials on Class Counsel's fees, costs, and incentive awards requests and finds that while the costs and incentive awards are fair and reasonable, the circumstances of this case warrant a reduction in attorneys' fees from Class Counsel's request. Accordingly, after careful review of the record, the Court **ORDERS** as follows:

    1.    <u>**Final Approval of the Proposed Settlement Agreement**</u>. The Settlement Agreement, including its exhibits, is finally approved as fair, reasonable, and adequate and within the range of reasonableness for final settlement approval. The Court finds that the following factors support final approval: (a) the Class Representatives and Class Counsel have adequately represented the Class; (b) the Settlement Agreement was negotiated at arm's length; (c) the relief provided for the Class appears adequate, taking into account: the costs, risks, and delay of trial and appeal; the effectiveness of the method of distributing relief to the Class, including the method of processing Class Member claims; the terms of the proposed award of

---

[1] On March 7, 2024, the Court issued an Amended Order granting Plaintiffs' Preliminary Approval Motion fixing a minor clerical error.

attorneys' fees as modified by this Order, including timing of payment; and the lack of any agreement required to be identified under Rule 23(e)(3); and (d) the Settlement Agreement treats Class Members equitably relative to each other. These factors were discussed at length in the Court's Order granting preliminary approval, and the Court finds no reason to deviate from that holding. In addition to these factors, the Court notes that the Class's reaction to the Settlement was very favorable: out of more than 330,000 Class Members, not a single Class Member objected—either to the substance of the Settlement or to Class Counsel's fees and incentive awards request—and there was only one exclusion request. This weighs heavily in favor of final approval. *See Wiles v. Sw. Bill Tel. Co.*, 2011 U.S. Dist. LEXIS 64163, at *10 (W.D. Mo. June 9, 2011) ("Having no objectors demonstrates strong support for the value and benefits delivered by the settlement. This factor weighs heavily in favor of approval of the settlement."); *McClean v. Health Sys.*, 2015 U.S. Dist. LEXIS 181040, at *19-20 (W.D. Mo. June 1, 2015) (this factor "strongly favor[ed] approval" where "[n]o Class Member filed an objection to [the] settlement, and only fourteen individuals opted out"). Thus, all relevant factors indicate that the Settlement is fair, reasonable, and adequate, and the Court finds that final approval of the Settlement is appropriate.

2. **Class Certification**. In granting preliminary approval, the Court found it likely that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) would be satisfied by the proposed Settlement Class. The Court affirms this finding, and certifies the Settlement Class for the purposes of judgment. The Class consists of:

- All persons who, while in the State of California, purchased one or more products advertised as being subject to a purported discount on Defendant's website RugsUSA.com from May 17, 2020, to October 12, 2023 ("California Subclass"); and

- All persons who, while in the State of Washington, purchased one or more products advertised as being subject to a purported discount on Defendant's website RugsUSA.com from June 30, 2019, to October 12, 2023 ("Washington Subclass"); and

- All persons who, while in the State of Oregon, purchased one or more products advertised as being subject to a purported discount on Defendant's website RugsUSA.com from July 13, 2022, to October 12, 2023 ("Oregon Subclass"); and

- All persons who, while in the State of Missouri, purchased one or more products advertised as being subject to a purported discount on Defendant's website RugsUSA.com from August 11, 2018, to October 12, 2023 ("Missouri Subclass").

The Court finds that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) are met:

a) **Numerosity**. The proposed Settlement Class consists of approximately 333,084 Settlement Class Members. Thus, the proposed Settlement Class is so numerous that joinder of all members is impracticable.

b) **Commonality**. There are multiple common questions of law and fact, including: (1) whether Defendant's advertising of sales and discount prices was false or misleading; (2) whether Defendant made false statements in its advertisements; (3) whether Defendant's advertisements were likely to deceive a reasonable consumer; (4) whether Defendant's statements regarding its pricing were material to Plaintiffs' purchasing decisions; and (5) whether Plaintiffs have suffered damages as a result of Defendant's conduct.

c) **Typicality**. Plaintiffs' claims are typical of the Settlement Class: like all Settlement Class Members, they allege that they purchased products advertised at a purported discount and relied on the discounts when making their purchases. But they allege that

they, like all Settlement Class Members, did not receive the advertised discounts because Defendant's products were always on sale.

d) **Adequacy**.  Plaintiffs' interests are aligned with those of the Class and they have no conflicts of interest with absent Class Members.  And Class Counsel are experienced litigators who approached litigation and mediation with a thorough understanding of the case.

e) **Predominance**.  The central common questions in this litigation—like whether Defendant's sales and pricing scheme generated false and deceptive advertisements—predominate over individual issues.

f) **Superiority**.  Because Settlement Class Members' potential individual claims are small, and because their claims are virtually identical, a class action is a superior method to adjudicate this dispute.

**3.** **Class Notice Plan**.  Due process under Rule 23 requires that Class Members receive notice of the settlement and an opportunity to be heard and participate in the litigation.  Fed. R. Civ. P. 23(c)(2)(B).  Here, as the Court found in granting preliminary approval, the proposed Notice Plan was the best notice practicable under the circumstances, was a reasonable manner of notice, and provided valid, due, and sufficient notice to the Settlement Class in full compliance with the requirements of applicable law, including but not limited to the Due Process Clause of the United States Constitution.  Direct notice was distributed to Class Members as ordered in the Preliminary Approval Order.  And the notices themselves provided all relevant information regarding Plaintiffs' allegations, the benefits provided by the Settlement, and Class Members' option to opt out or object to the Settlement.  Moreover, the Settlement Administrator, Angeion Group, established and managed a Settlement Website that provided additional

5

Case 6:23-cv-03250-SRB     Document 44     Filed 06/27/24     Page 5 of 12

information to Class Members. In sum, the Court finds that thorough and effective Notice was successfully administered.

4. **Distribution of Settlement Awards**. The Settlement calls for the distribution of cash and credit benefits to Class Members. The Court finds that the plan of distribution of these benefits is reasonable and effective, and directs that Defendant and the Settlement Administrator distribute the benefits in the manner directed by the Settlement Agreement.

5. **Release of Claims**. The Settlement Agreement requires Class Members to release all claims that "arise from the same facts and claims alleged" in the operate Complaint. Dkt. 30-1 ("Settlement Agreement") §III(D). This release is sufficiently narrowly tailored. Upon entry of this Order, the claims asserted in this Action, and the Released Claims of each Class Member, are fully, finally, and forever released and discharged pursuant to the terms of the Settlement Agreement. Thus, Class Members are permanently barred and enjoined from asserting, commencing, prosecuting or continuing any of the Released Claims against the Discharged Parties. The singular Class Member who opted out of the Settlement Agreement has not released any claims and will retain all rights against Defendant.

6. **Incentive Awards**. The Court confirms its preliminary finding that the requested incentive award amounts are appropriate. The requested awards are fair and reasonable given the Class Representatives' service to the Class, and they do not deter from the fairness or reasonableness of the settlement. Thus, the Court orders that the Class Representatives be paid incentive awards of $2,500 each.

7. **Attorneys' Fees and Costs**. Courts in the Eighth Circuit typically use the "percentage-of-the-fund method" to award attorneys' fees from a common fund. *See, e.g.*, *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019). "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well

established,'" *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)), or even "preferable[.]" *Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-CV-4321, 2015 WL 3460346, at *3 (W.D. Mo. June 1, 2015) (quoting *West v. PSS World Med., Inc.*, No. 13-CV-574, 2014 WL 1648741, at *1 (E.D. Mo. Apr. 24, 2014)). The Court will therefore use the percentage approach to award fees in this case.

In determining the reasonableness of a fee award under the percentage approach, courts typically consider some or all of the relevant factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *See In re Target Corp. Customer Data Security Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018). The Johnson factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*In re Target*, 892 F.3d at 977 n.7. To be sure, "[m]any of the Johnson factors are related to one another and lend themselves to being analyzed in tandem." *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 886 (S.D. Iowa 2020). The Court has considered the Johnson factors here, and finds that they weigh in favor of reducing Class Counsel's requested attorneys' fees of $2,823,921.30, which is approximately 20% of the common fund.

First, as to time and labor required, Defendant argues that "this case took little time and required scant labor." (Doc. #39, p. 15.) Defendant points to Class Counsel filing three similar

7

Case 6:23-cv-03250-SRB    Document 44    Filed 06/27/24    Page 7 of 12

lawsuits prior to the one pending before this Court.² Defendant contends that each complaint contains similar allegations and that "the parties did not engage in any substantive litigation" in any of the cases prior to settlement. (Doc. #39, p. 8.) Indeed, in this case, while Defendant filed a motion to dismiss on October 24, 2023, the parties filed a joint motion to stay the case two days later. Plaintiffs never filed a response to that motion. The only other documents filed in this case were status reports, extensions for briefing, and an unopposed motion for preliminary approval of the class action settlement. It does not appear that much, if any, motion work was done in the other jurisdictions. Ultimately, approximately only ten months passed between the initial complaint in the Northern District of California and Plaintiffs' motion for preliminary approval of class action settlement.

Further, as to the time and labor spent in mediation itself, the parties did not spend an overly extensive amount of time mediating this case as it does not appear that multiple mediation attempts were needed nor is it argued that extensive discovery was conducted beforehand. *cf. In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d at 1002 (discussing how counsel spent their time in labor by "engag[ing] in motion practice involving dismissal and summary judgment motions, review[ing] documents and other forms of discovery, retain[ing] experts on fiduciary law and damages, and negotiat[ing] a favorable settlement"). Ultimately, while Class Counsel prepared for mediation and successfully negotiated a favorable settlement, the time and labor put into this case was greatly reduced by repurposing information and documents from similar cases and not having to extensively litigate the claims; therefore, this factor weighs in favor of reducing the fee award.

---

² *See Alexandria Lee, et al. v. RugsUSA, LLC*, in the Northern District of California, Case No. 3:23-cv-2412; *Tawney Briggs, et al. v. RugsUSA, LLC*, in the Western District of Washington, Case No. 2:23-cv-982; *Christopher Korda, et al. v. RugsUSA, LLC*, in the District of Oregon, Case No. 3:23-cv-1026.

Defendant next argues that when comparing the requested award in this case to similar cases, the Court should look to the "nearly identical false advertising/fake discount class settlement" of *Barr v. SelectBlinds LLC*, No. 2:22-cv-08326-SPG-PD filed by Class Counsel in the U.S. District Court for the Central District of California. (Doc. #39, p. 16.) In that case, the court approved a fee for "approximately 15% of the Settlement's total value." (Doc. #39-7, p. 23.) Defendant states, however, that even with a fee substantially less than the 20% requested here, the class in *Selectblinds* will receive more in "gross dollars" compared to the Class Members here. (Doc. #39, p. 16.) While Class Counsel argues that "[o]n a percentage-of-revenue basis, the Class [Members] here will receive the same" as in *SelectBlinds*, the Court finds the similarity between the cases and the lower fee rate in *SelectBlinds* as another basis to lower Class Counsel's fees in this case. (Doc. #42, p. 10.)

Further, the Court agrees with Defendant that given "Class Counsel has filed numerous, nearly identical class action lawsuits against other defendants asserting the same false advertising/fake discount allegations prior to filing a lawsuit against RugsUSA[,]" the factual and legal issues are not novel or complex enough to warrant the requested fee. (Doc. #39, p. 18.) While Class Counsel argues that "[f]ake discount cases are subject to a heightened pleading standard that demands a detailed, fact-intensive, pre-filing investigation" making them complex cases, Class Counsel fails to show how those pleading requirements make this particular case novel and complex given Class Counsel's experience in filing similar lawsuits in the past. (Doc. #42, p. 7.) Further, as Plaintiffs did not have to survive a motion to dismiss or summary judgment, the Court is not able to state this case presented novel and difficult legal and factual issues.

Courts may also adjust the percentage of a common fund awarded to class counsel if the requested percentage "would yield windfall profits for class counsel in light of the hours spent on

9

the case" or would be excessive considering "the results achieved[.]" *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942, 950 (9th Cir. 2011).

Here, the Court is concerned about the "division of spoils between class counsel and class members." *Redman v. RadioShack Corp.*, 768 F.3d 622, 639 (7th Cir. 2014). The common fund amounts to $14,268,403 and Class Counsel states that "Class Members will receive an average payment of approximately $34[.]" (Doc. #36, p. 13.) Class Members have the option of choosing between a cash award or a voucher to use on Defendant's website and if no choice is made, they will automatically receive the voucher. However, at the final fairness hearing on June 26, 2024, Class Counsel conceded that only approximately 10% of the 330,000 Class Members had viewed the claims administration website with only 5,200 electing to be paid in cash. Neither Class Counsel nor Defendant's attorneys could state what the voucher claim rate has been or will likely be except that it is potentially low. But with a cash claim rate of just 1.56%, the overall benefit to the Class Members is quite low here as many of the Class Members will receive no benefit if they claim neither the cash nor the voucher.

Therefore, considering Class Counsel's $2.8 million dollar fee request and the correspondingly low per-claimant recovery recovered for the class, the Court finds this consideration also warrants a lower percentage for attorneys' fees in this case. *Rougvie v. Ascena Retail Grp., Inc.*, No. CV 15-724, 2016 WL 4111320, at *25 (E.D. Pa. July 29, 2016) (in determining attorneys' fees in a class settlement where members could also choose a cash option instead of a voucher that "courts need to consider the level of direct benefit provided to the class in calculating attorneys' fees") (internal citation omitted).

Finally, while Class Counsel is correct that a lodestar crosscheck is "not required" in the Eighth Circuit, the Court is unable to perform one as Class Counsel did not provide any information to make that calculation possible. *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017).

Therefore, the Court cannot confirm that Class Counsel's original request is reasonable. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999) (stating that the "use of the 'lodestar' approach is sometimes warranted to double-check the result of the 'percentage of the fund' method"); *see also Roeser v. Best Buy Co.*, No. CIV. 13-1968 JRT/HB, 2015 WL 4094052, at *10 (D. Minn. July 7, 2015) (deciding not to use the percentage approach because of insufficient "reliable evidence of the value of the settlement[,] including "the percentage of the class that will actually take advantage of the settlement.")

In light of the above and after considering Class Counsel's Motion for Attorneys' Fees, Costs, and Incentive Awards, and the Parties' arguments regarding the request, the Court DENIES Class Counsel's requested award of $2,823,921.30 in fees. Instead, the Court believes that a lower percentage of the common fund is warranted and therefore, GRANTS Class Counsel attorneys' fees in the amount of $750,000—approximately 5.25% of the common fund—and $29,759.30 for costs and expenses. The fees and costs must be paid in the manner directed by the Settlement Agreement.

13. **Final Judgment and Limited Continued Jurisdiction**. As a result of the Settlement's Final Approval, Final Judgment is entered based on the Parties' Settlement Agreement. Accordingly, this action is **DISMISSED WITH PREJUDICE**, with all Parties to bear their own costs and fees except as set forth herein. Notwithstanding the forgoing, and without affecting the finality of this Order in any way, the Court shall retain jurisdiction to enforce the terms of the Settlement Agreement, and guarantee that its terms and this Order are carried out.

**IT IS SO ORDERED.**

Date: June 27, 2024                             /s/ Stephen R. Bough
                                                Hon. Stephen R. Bough
                                                United States District Court Judge